UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WESTERN WORLD INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | CIVIL ACTION FILE NO.: 1:12-cv-2117-AT |
| NARCONON OF GEORGIA, INC., NARCONON INTERNATIONAL, PATRICK C. DESMOND AND MARY C. DESMOND, INDIVIDUALLY, AND MARY C. DESMOND, AS ADMINISTRATRIX OF THE ESTATE OF PATRICK W. DESMOND, AND NONPROFITS' INSURANCE ALLIANCE OF CALIFORNIA, | |
| Defendants. | |

## RESPONSE OF WESTERN WORLD INSURANCE COMPANY TO NONPROFITS' INSURANCE ALLIANCE OF CALIFORNIA'S MOTION TO DISMISS

COMES NOW Western World Insurance Company ("Western World"), Plaintiff in the above-styled action, by and through counsel, and hereby responds to the motion to dismiss of Nonprofits' Insurance Alliance of California ("NIAC") and would show the Court as follows:

-1-

## FACTUAL BACKGROUND

Defendants Patrick C. Desmond, Mary C. Desmond individually and Mary C. Desmond as administratrix of the Estate of Patrick W. Desmond ("the Desmonds") brought a state court civil action against Narconon of Georgia, Narconon International, Delgado, Lisa Carolina Robbins, M.D. and the Robbins Group, Inc., for various allegations of wrongdoing in the administration of drug and alcohol abuse counseling and for the death of Patrick Desmond ("Underlying Action;" a true and correct copy of the first amended complaint in the Underlying Action is attached to the Complaint for Declaratory Judgment as Exhibit "A". (See Docket, Document No. 1-1.)

The instant action arises out of an insurance coverage dispute and Plaintiff Western World's claimed risk of immediate and ongoing irreparable harm in the form of substantial ongoing cost of defense under the subject Western World insurance policy for the defense of the Underlying Action, for which there are genuine coverage defenses and substantial uncertainties as to the applicability of the Western World coverage (See Docket, Document 1, ¶ 9). A further dispute exists with respect to the applicability of the policy of insurance issued by Nonprofits Insurance Alliance of California ("NIAC") to Narconon International to the Underlying Action. (See Docket, Document Nos. 30 and 32.)

Accordingly, the Complaint for Declaratory Judgment ("Complaint") was filed in this matter on June 20, 2012, naming, among others Narconon International as a defendant.  (See Docket, Document 1, ¶ 3.)  Subsequently, pursuant to an order of this Court, (See Docket, Document No. 29), the First Amendment to Complaint for Declaratory Judgment was filed.  (See Docket, Document Nos. 30 and 32.)

As set forth in the First Amendment, NIAC issued a policy of commercial liability insurance to Narconon International, Policy No. 2007-17800 NPO ("NIAC Policy"), which provides coverage to Narconon International and other covered entities and persons for the claims, counts, and causes of action set forth in the Underlying Action.  (See Docket, Document No. 32, ¶ 159.)  However, NIAC denies that the NIAC Policy applies to cover the allegations set forth in the Underlying Action and has failed and refused to provide coverage and a defense to Narconon International. (See Docket, Document No. 40-1, p. 3; Document No. 32, ¶ 160, 162-163.) As NIAC is obligated to provide coverage and a defense to Narconon International, it is also obligated to reimburse Western World for the fees, costs, and expenses of defense expended by Western World in its defense of Narconon International in the Underlying Action.  (See Docket, Document No. 32, ¶ 161.)

In the case at bar, a genuine issue exists as to whether the NIAC Policy applies to provide coverage to Narconon International with respect to the Underlying Action, which includes a duty to defend the claims set forth in the Underlying Action.  (See Docket, Document No. 32, ¶ 160.) Accordingly, Western World seeks a declaration and determination that NIAC's policy of commercial liability insurance obligates it to provide coverage and a defense to Narconon International and other covered persons and entities for all allegations against Narconon International in the Underlying Action set forth in the Amended Complaint and that NIAC is obligated to reimburse Western World for the defense fees, costs and expenses expended by it to date in the Underlying Action.  (See Docket, Document No. 32, p. 8.)

In response to the First Amendment, NIAC filed its Motion to Dismiss.

## ARGUMENT AND CITATION OF AUTHORITIES

### A. WESTERN WORLD HAS STANDING TO BRING ITS CLAIMS AGAINST NIAC AND, THEREFORE, THIS COURT HAS SUBJECT MATTER JURISDICTION.

"Determination of a litigant's standing to sue is a preliminary jurisdictional matter which should be determined on the allegations of the complaint without consideration of the likelihood of the litigant's success on the underlying merits of the case."  Saladin v. Milledgeville, 812 F.2d 687, 690 fn. 4 (11th Cir. Ga.

1987)(internal citations omitted).   "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (U.S. 1992) (internal citations omitted).

> The analytical framework for resolving standing issues requires consideration of both "constitutional" and "prudential" requirements for standing...."The constitutional requirements derive from Article III's limitation of federal jurisdiction to situations where a justiciable 'case or controversy' exists between the litigants." …. The Eleventh Circuit has explained that to meet the requirements of Article III, "the plaintiff must show: (1) that he has suffered an actual or threatened injury, (2) that the injury is fairly traceable to the challenged conduct of the defendant, and (3) that the injury is likely to be redressed by a favorable ruling."

Young Apts., Inc. v. Town of Jupiter, 529 F.3d 1027, 1038 (11th Cir. Fla. 2008) (internal citations omitted.) "The injury-in-fact element requires 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla., 641 F.3d 1259, 1265 (11th Cir. Fla. 2011). "The causation element of Article III standing requires 'a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the

challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" Id.

Prudential standing requires the Court to consider three prudential principals when considering whether a party's claims should be dismissed. Young Apts., Inc. v. Town of Jupiter, 529 F.3d 1027, 1039 (11th Cir. Fla. 2008). NIAC's Motion to Dismiss only concerns itself with the third principal: "3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties." Young Apts., Inc. v. Town of Jupiter, 529 F.3d 1027, 1039 (11th Cir. Fla. 2008).[1]

In order to address standing, the Court is required to conduct a "careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." Hollywood Mobile Estates Ltd. V. Seminole Tribe of Fla., 641 F. 3d 1259, 1265 (11th Cir. 2011).   The following examination of the allegations set forth in the Complaint for Declaratory Judgment as amended by the First Amendment

---

[1] Western World avers that it has also met the other two prongs regarding prudential standing as: its complaint, as amended, falls within the zone of interest protected by the statute or constitutional provision at issue-the declaratory judgment act; the complaint, as amended raises concrete issues and grievances which are appropriately before this court for resolution. See Young Apts., Inc. v. Town of Jupiter, 529 F.3d 1027, 1039 (11th Cir. Fla. 2008).

demonstrates that Western World is entitled to an adjudication of the particular claims asserted.

### 1.  Western World has Constitutional Standing.

#### a.  Western World suffered an actual injury and threatened injury which are concrete and particularized as well as actual and imminent.

Western World suffered both an actual and threatened injury which are concrete and particularized as well as actual and imminent in that it has provided a defense to Narconon International in the Underlying Action despite the fact that: 1) Western World's policy does not provide coverage to Narconon International for the claims, counts and causes of action; and 2) NIAC is obligated to provide said coverage and defense.  (See Docket, Document No. 32, ¶ 161, 163; Document No. 1, ¶¶ 46, 47, 161.)  By providing such a defense, Western World has incurred, costs, fees and expenses of defense and will, due to NIAC's denial of coverage, suffer additional injury in the future as Western World continues to provide a defense to Narconon International.  (See Docket, Document No. 1, ¶¶ 46, 47; Document, No. 32, ¶ 161.)  Western World will also suffer further injury if Narconon International is found liable in or settles the Underlying Action, as the duty to indemnify it for any judgment or settlement would improperly fall to Western World due to NIAC's denial of coverage.  (See Docket, Document No.

32, ¶¶ 159, 160, 161, 163; Document No. 1, ¶¶ 46, 47.)  NIAC's refusal to provide coverage to Narconon International, therefore, invades Western World's legally protected contractual interest which requires it to provide to Narconon International <u>only</u> that coverage to which it is contractually entitled.   <u>Boardman Petrol., Inc., Fed. Mut. Ins.</u>, 269 Ga. 326, 327, (1999).   "[A]n insurance company is free to fix the terms of its policies as it sees fit, so long as such terms are not contrary to law, and it is equally free to insure against certain risks while excluding others." <u>Nationwide Mut. Fire Ins. Co. v. Somers</u>, 264 Ga. App. 421, 426 (Ga. Ct. App. 2003) (internal citations omitted).  As NIAC insures Narconon International with respect to the Underlying Action, NIAC is responsible for the attendant fees, costs and expenses of defense; however, as NIAC has denied coverage, that burden has fallen to Western World, which is an invasion of its legally protected interests.

### b. Western World's injury is fairly traceable to the challenged conduct of the defendant.

This element requires demonstration of a causal connection between the injury and the conduct complained of.  Despite its argument to the contrary, NIAC's decision to deny coverage to Narconon International has specifically caused injury to Western World as, with respect to the Underlying Action, it has left the financial burden of defending, and potentially indemnifying Narconon International, on Western World despite the existence of the applicable NIAC

Policy.  (See Docket, Document No. 32, ¶¶ 159, 160, 161, 163; Document No. 1, ¶¶ 46, 47.)  Furthermore, in light of NIAC's denial of coverage, it is immaterial that Western World undertook a defense of Narconon International.  In good faith, and under a reservation of rights, Western World provided a defense to Narconon International.  (See Docket, Document, No. 1, ¶ 46.)  Having done so, Western World has suffered past injury and will continue to be injured as a result of the pending Underlying Action. (See Docket, Document, No. 1, ¶ 47.)  Regardless, such proper actions by Western World do not relieve NIAC of its duties and obligations owed to Narconon International to indemnify and defend.

NIAC also argues that Western World is simply incurring the same costs that it would have incurred in representing Narconon of Georgia.  (See Docket, Document No. 40-1, p. 8.)  This is simply not the case.  Narconon of Georgia and Narconon International are different entities with different applicable defenses.  For instance the trial court in the Underlying Action recently struck Narconon of Georgia's Answer.  (A true and correct copy of the order is attached hereto as **Exhibit 1**and incorporated herein by reference.)  Accordingly, if NIAC had not denied coverage, the costs, fees, and expenses incurred to date by Western World on Narconon International's behalf would, instead, have been borne by NIAC.

### c. Western World's Injury is likely to be redressed by a favorable ruling.

As the NIAC Policy is applicable, a favorable ruling confirming same would relieve Western World from any further financial obligations to Narconon International and would also require NIAC to reimburse Western World for the costs, fees and expenses of defense incurred by Western World on behalf of Narconon International in the Underlying Action.

### d. Western World has initiated a legitimately justiciable controversy.

The instant action is a declaratory judgment action.   This is significant in light of NIAC's claims that Western World has not initiated a legitimately justiciable controversy "because it is not entitled to a declaration of rights under a policy to which it is a stranger." (See Docket, Document, 40-1, p. 8.)  Western World does not contend that it is a party to the NIAC Policy; however, it does contend that a justiciable controversy exists as to the applicability of that policy and NIAC's duty to provide a defense to Narconon International. (See Docket, Document No. 1, ¶¶ 47, 48.)

> The declaratory judgment act, in its reference to "'cases of actual controversy' manifestly has regard to the constitutional provision and is operative only in respect to controversies which are such in the constitutional sense."...Congress did not broaden the jurisdiction of the federal courts via the declaratory judgment act, but rather

> provided a new procedural device for handling controversies over which the courts already have jurisdiction....Since the jurisdictional limits under the declaratory judgment act mirror those found in the Constitution, this court does not have subject matter jurisdiction over the issue presented unless the issue is a "case or controversy."

Provident Life & Acci. Ins. Co. v. Transamerica-Occidental Life Ins. Co., 850 F.2d

1489, 1490-1491 (11th Cir. Fla. 1988).

> The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests....Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages.

Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-241 (U.S. 1937).

For instance, in Provident Life, *supra,* one insurance company brought a declaratory judgment action against another insurer to determine which was responsible for an insured's medical expenses. Id. at 1489. The court found no controversy existed, but concluded that "had two insurers jointed (sic) the insured in their action, a definite and substantial controversy would exist, as the declaratory judgment action would be to establish the rights and obligations

between the insurers and insured as evidenced by the insurance contract." Id. at 1493.

Western World has filed a declaratory judgment action against Narconon International and its insurer, NIAC, and others, regarding the respective rights, duties and obligations under the pertinent policies. NIAC has improperly denied coverage and a defense to Narconon International with respect to the Underlying Action, thereby requiring Western World to bear Narconon International's fees, costs and expenses of defense in the Underlying Action. Accordingly, a justiciable controversy exists as to which entity is legally responsible to provide coverage and a defense to Narconon International, and, thus, whether NIAC is liable to Western World for the fees, costs and expenses of defense expended by it to date in defense of Narconon International in the Underlying Action. See Provident Life & Acci. Ins. Co. v. Transamerica-Occidental Life Ins. Co., 850 F.2d 1489, 1490-1491 (11th Cir. Fla. 1988). Accordingly, Western World is asserting its own legally protected rights.

The Underlying Action also contains claims that Narconon of Georgia breached its duties to the decedent, Patrick Desmond, by "allowing and facilitating Patrick Desmond's on-going use of alcohol and drugs while in treatment" (See Docket, Document No. 1-1, ¶ 146) and specify that "Patrick was allowed to drink

beer and vodka with [Narconon of Georgia's] employees and staff members.  (Id.
at ¶ 61-62.) Furthermore, in their initial Complaint for Wrongful Death, Pain and
Suffering, and Other Damages, at ¶ 30, the Desmonds allege that "On the evening
of June 10, 2008, Patrick was drinking beer and vodka with Narconon employees
and staff members in a staff member's apartment at One Sovereign Place."
(Complaint for Wrongful Death, Pain and Suffering, and Other Damages, ¶ 30;  a
true and correct copy of the said document is attached hereto as **Exhibit 2** and
incorporated herein by reference.)   The Desmonds also allege that Narconon
International is the parent/licensor or Narconon of Georgia and that it was doing
business in the state of Georgia by and through its subsidiary/licensee.  (Id. at ¶ 4.)
In response, Narconon International admitted that it licensed Narconon of Georgia,
Inc. and does not affirmatively deny that it is Narconon of Georgia's parent
company.  (Answer of Narconon International, p. 7, ¶ 4.; a true and correct copy of
said document is attached hereto as **Exhibit 3** and incorporated herein by
reference.)   In the Plaintiff's First Amended Complaint to Add Allegations and
Claims, the Desmonds also claim that Narconon of Georgia is heavily regulated by
Narconon International and that Narconon International is intricately involved in
Narconon of Georgia's operations. (See Docket, Document No. 1-1, ¶¶ 13, 32.)

The NIAC Policy includes a Liquor Liability Coverage Form which provides coverage for liability for any covered injury imposed on Narconon International "by reason of the selling, serving or furnishing of any alcoholic beverage." (See Docket, Document No. 40-2, 49; Section I, 1.a.)   As Narconon International is alleged to be doing business in Georgia by and through Narconon of Georgia, NIAC is breaching its obligation to defend and indemnify its insured for acts occurring in Georgia.  NIAC has also failed to undertake any effort to settle or participate in settlement negotiations on behalf of its insured.  These admissions, acts, duties, and breaches of duties are patent evidence that a justiciable controversy exists and that this case should <u>not</u> be dismissed.  Said acts, duties, and breaches of duties by NIAC occurred in and continue to occur in Georgia and are also evidence that NIAC has transacted and is transacting business in Georgia.

### 2.  Western World has Prudential Standing.

The key issue in an action brought pursuant to the Declaratory Judgment Act, is whether there is a justiciable controversy.  <u>Atlanta Gas Light Co. v. Aetna Casualty & Sur. Co.</u>, 68 F.3d 409, 414 (11th Cir. Ga. 1995).  This determination is made by examining each particular case.  <u>Id</u>.

Despite NIAC's contentions to the contrary, Western World is not suing to enforce a contract to which it is not a party. In the present action, Western World has properly filed this action under the federal Declaratory Judgment Act to determine its rights and obligations with respect to Narconon International and its insurer, NIAC, and others.

The cases referenced by NIAC in support of its argument that Western World has no standing to enforce the NIAC Policy are not on point. Western World is not alleging that it is a party or third party beneficiary under the NIAC Policy; instead, Western World has appropriately sought a declaration and determination from this Court of its obligations and NIAC's obligations under their respective policies to Narconon International.  In the event that it is determined and declared that NIAC owes coverage and a defense to Narconon International, NIAC's wrongful denial resulted in the accrual of costs, fees, and expenses of defense by Western World for which it should be liable to Western World for reimbursement.

### 3.  This Court has Personal Jurisdiction over NIAC.

#### a.  Personal Jurisdiction Over NIAC Under O.C.G.A. § 9-10-91.

A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the

> Due Process Clause of the Fourteenth Amendment to the United States Constitution....When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court.

Diamond Crystal Brands, Inc. v. Food Movers Int'l, 593 F.3d 1249, 1257-1258 (11th Cir. Ga. 2010). In this case, under both the long arm analysis and the due process analysis the result is the same: it is appropriate for this Court to exercise personal jurisdiction over NIAC.

Pursuant to O.C.G.A. § 9-10-91 ("Georgia Long Arm Statute"), "A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she: (1) Transacts any business within this state;"  O.C.G.A. § 9-10-91.  At least one prong of the long arm statute must be satisfied.  Diamond Crystal Brands, Inc., 593 F.3d 1249, 1257-1258 (11th Cir. Ga. 2010).

> Jurisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice. n3

Aero Toy Store, LLC v. Grieves, 631 S.E.2d 734, 737 (Ga. Ct. App. 2006); (cited by Amerireach.com, LLC v. Walker, 290 Ga. 261 (Ga. 2011).  In applying this three prong test the 11th Circuit has stated, "…we interpret the first prong of this test as reflecting the requirement of subsection (1) of the long-arm statute and the second and third prongs as comprising the traditional due process inquiry. The significance of the three-prong approach is that, under Georgia law, there must be a long-arm assessment that is separate and apart from the due process analysis." Diamond Crystal Brands, Inc., 593 F.3d at  1260 fn. 11.

Initially, it must be pointed out that Western World sufficiently alleged facts in its First Amendment to make out a case of prima facie jurisdiction against NIAC,  (United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir 2009), and despite the fact that NIAC has tendered the Declaration of Pamela E. Davis ("Declaration") the burden of proving jurisdiction has not been shifted back to Western World.

In the First Amendment, Western World pleaded that NIAC issued a policy covering Narconon International for the claims, counts and causes of action set forth in the Underlying Action (See Docket, Document No. 32, ¶ 159); NIAC has denied coverage and thereby a defense under the policy (See Docket, Document No. 32, ¶ 160-161); NIAC is obligated to reimburse Western World for fees, costs

and expenses of defense expended by Western World in the Underlying Action (See Docket, Document No. 32, ¶ 161); NIAC has failed and refused to provide coverage and a defense to Narconon International (See Docket, Document No. 32, ¶ 163); that NIAC has transacted business in Georgia by insuring Narconon International against risks in Georgia  and thereby has sufficient contacts with Georgia (See Docket, Document No. 32, ¶¶ 164, 166).

The Declaration provided on behalf of NIAC simply attempts to cloud the water by pointing to purported facts which NIAC claims evidence its intent limit is contacts with Georgia; however, significantly, nowhere in the Declaration, does Ms. Davis deny that the NIAC Policy provides coverage to Narconon International in Georgia.  (See Docket, Document No. 40-2.) Furthermore, physical presence of a non-resident in Georgia is not required for purposes of finding personal jurisdiction under the Georgia Long Arm Statute, O.C.G.A. § 9-10-91(1). Amerireach.com, LLC v. Walker, 290 Ga. 261, 265 (Ga. 2011).

Under its policy, NIAC agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. (See Docket, Document 40-2, p. 21, Section I- Coverages, 1.a.) Section I, 1.b. of the NIAC

Policy then states that "This insurance applies to "bodily injury" and "property damage"  only if (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";  (See Docket, Document 40-2, p. 21, Section I- Coverages, 1.b(1).) "Covered Territory" is defined as: "the United States of America (including its territories and possessions), Puerto Rico and Canada;" (See Docket, Document, Document 40-2, p. 30, Section V – Definitions, 4.a.)

The NIAC Policy provides coverage for injuries occurring within the United States, which obviously includes Georgia.  (See Docket, Document No. 40-2, p. 30.)  By purposefully insuring Narconon International in Georgia NIAC has transacted business in Georgia and, therefore, is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91.  In addition, NIAC's inclusion of Georgia within its covered territory is related to the Desmonds' claims, counts and causes of action against Narconon International set forth in the Underlying Action which is pending in Georgia.

The Georgia Court of Appeals has determined, in an automobile insurance context, that such "insurance policies are relatively unique, as they 'do not have a particular place where the object to the contract is to be performed.' Ga. Auto Ins. Law, supra at § 1-3. The protection provided by the policy follows the vehicle

covered or follows the insured covered under the terms of the policy." <u>Klein v.</u>
<u>Allstate Ins. Co.</u>, 202 Ga. App. 188, 190 (Ga. Ct. App. 1991).   Similarly, the
general liability insurance policy in the case at bar insures Narconon International
in the covered territory of the United States.   As such, NIAC has purposefully
transacted business in Georgia. In addition, the Georgia Court of Appeals has also
applied the Georgia Long Arm Statute using a stream of commerce analysis,
similar to the insurance concept set forth above, and held that, a business
transacted business in Georgia when it sent an item knowing that it would be
placed into the Georgia stream of commerce.   <u>Patron Aviation v. Teledyne</u>
<u>Industries,</u> 154 Ga. App. 13, 14 (1980).   By selling a policy which provided
coverage for events in Georgia, NIAC has likewise placed its policy into the
Georgia stream of commerce and is, therefore, subject to the personal jurisdiction
of this Court.

Finally, despite its patently applicable liquor liability coverage, discussed
above, NIAC has failed to defend and indemnify Narconon International and has
failed to undertake any effort to settle or participate in settlement negotiations on
behalf of its insured.   Said duties and breaches of duties by NIAC are occurring in
and continuing to occur in Georgia and are also evidence that NIAC has transacted
and is transacting business in Georgia.

**b. Due Process Requirements Have Been Met to Establish Personal Jurisdiction Over NIAC.**

This is a case of specific jurisdiction.  "Specific jurisdiction is present when the defendant's contacts with the forum state 'satisfy three criteria: they must be related to the plaintiff's cause of action or have given rise to it; they must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, and they must be such that the defendant should reasonably anticipate being haled into court there.'" Canty v. Fry's Elecs., Inc., 736 F. Supp. 2d 1352, 1360 (N.D. Ga. 2010).

With respect to due process the 11th Circuit has held that, "[t]he heart of this protection is fair warning--the Due Process Clause requires 'that the defendant's conduct and connection with the forum State [be] such that he should reasonably anticipate being haled into court there.' …Therefore, states may exercise jurisdiction over only those who have established 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Diamond Crystal Brands, Inc., 593 F.3d at 1267. (internal citations omitted.)

In the case at bar, exercise of personal jurisdiction by this Court over NIAC would not violate due process.   NIAC's insurance policy contains a nationwide covered territory, which, thereby, places NIAC on notice that it could be haled into

court in Georgia and any other state in the union.  Although the Davis' Declaration

claims NIAC has taken steps to limit its contacts with states outside of California,

the NIAC Policy language proves otherwise.

Although decided prior to recent Georgia and federal decisions applying the

Georgia Long Arm Statute, McGow v. McCurry, 412 F.3d 1207 (11th Cir. Ga.

2005) is instructive on the due process analysis of the personal jurisdiction issues

as it presented facts similar to those at bar:

> Auto Club's appeal presents the issue of whether a forum
> state, like Georgia, can properly exercise personal
> jurisdiction over an insurer, like Auto Club, whose only
> relevant contacts with the forum are (1) the inclusion of
> the forum state within the covered territory of the
> insurer's policy and (2) the occurrence of the relevant
> accident in the forum state.

Id.  The McGow Court found that the district court had properly relied upon the

theory of specific jurisdiction to find that minimum contacts existed between an

out of state insurer and the state of Georgia.    Id.   The McGow court affirmed

personal jurisdiction over Auto Club finding that "Auto Club's  contact with

Georgia – i.e., its inclusion of Georgia within its covered territory for UM

coverage, is related to McGow's cause of action for damages covered by the

policy."   Id. Second, the McGow court held that Auto Club, contrary to its

arguments, "purposely availed itself of the privileges and benefits of providing

insurance coverage in Georgia and the entire United States." Id. "By including Georgia within its covered territory,  Auto Club purposely sought to provide coverage for accidents occurring in Georgia, with full knowledge that litigation could result and that Auto Club could be haled into court in Georgia and required to make payments in Georgia based on that coverage." Id. at 1215.    Ultimately, the court held that "the 'expectation of being haled into court in a foreign state is an express feature of its policy.'" Id.

The holding in McGow and the facts of the instant case establish that NIAC is subject to the personal jurisdiction of this Court. Similarly, in the case at bar, NIAC's contact with Georgia, i.e., the inclusion of Georgia within the covered territory, is related to the Plaintiff's causes of action in the Underlying Action for damages covered by the NIAC Policy.  NIAC has also intentionally sought to provide coverage in Georgia by providing a policy to Narconon International which included Georgia in its covered territory, and, thereby, had full knowledge that litigation could be haled into litigation in Georgia. (See Document 40-2, p. 30.)  Had NIAC desired to avoid suit in Georgia, it should have excluded Georgia as a covered territory.  See McGow, 412 F.3d at 1215.

The issues of fair play and substantial justice must also be considered. Elements to be considered include:

> (a) "the burden on the defendant," (b) "the forum State's interest in adjudicating the dispute," (c) "the plaintiff's interest in obtaining convenient and effective relief," (d) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (e) "the shared interest of the several States in furthering fundamental substantive social policies."

McGow, 412 F.3d at 1216.

The McGow court without pause determined that fair play and substantial justice was found as it was a minimal inconvenience for the insurer to defend a claim in Georgia arising from an accident occurring in Georgia, where the defendant was a resident of Georgia, and where the policy provided insurance in Georgia. Id.

In the current matter, Court's exercise of jurisdiction does not violate traditional notions of fair play and substantial justice as:  (1) the burden on the defendant is minimal.  It is a sophisticated entity which hired competent local counsel to defend it and such defense can easily continue;  (2) the State of Georgia has a substantial interest in adjudicating a dispute arising out of a death occurring in Georgia and involving a Georgia corporation allegedly involved in a civil conspiracy with Narconon International (Docket, Document No. 1, ¶¶ 2, 16 and 50); Document No. 1-1, ¶¶ 161-162); (3) Subjecting NIAC to the jurisdiction of this Court affords Western World   convenient  and  effective  relief  as  the

Underlying Action is being tried Georgia, the death at issue occurred in Georgia, and the attorneys representing all parties to this action and the Underlying Action are local. (See Docket, Document No. 1-1, including p. 2, 21, 30- 35.) <u>In addition, the NIAC Policy provides coverage in Georgia</u>; (4) Judicial efficiency will also not be served as the failure to exercise jurisdiction over NIAC will likely result in another lawsuit in another jurisdiction involving at least, Western World, NIAC and Narconon International and; and (5) all states involved have an interest in assuring its citizens that insurance companies will comply with their obligations under the policies.

## **CONCLUSION**

For the foregoing reasons Western World's claims against NIAC should be sustained as Western World has standing to assert the claims and because this Court has personal jurisdiction over NIAC.

<u>s/STEPHEN G. SMITH, JR.</u>
Georgia Bar No. 795287
For the Firm
Attorney for Plaintiff
DENNIS, CORRY, PORTER & SMITH, L.L.P.
3535 Piedmont Road, NE
14 Piedmont Center, Suite 900
Atlanta, Georgia 30305-4611
Telephone:(404) 365-0102
Facsimile: (404) 365-0134

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2012, I electronically filed

**RESPONSE OF WESTERN WORLD INSURANCE COMPANY TO**

**NONPROFITS' INSURANCE ALLIANCE OF CALIFORNIA'S MOTION**

**TO DISMISS** with the Clerk of Court using the CM/ECF system which will

automatically send email notification of such filing to the following attorneys of

record:

Herman Fussell, Esq.
Halsey G. Knapp, Jr., Esq.
Foltz Martin, LLC
3525 Piedmont Road, NE
Five Piedmont Center, Suite 750
Atlanta, GA  30305

Thomas M. Barton, Esq.
Aaron P.M. Tady, Esq.
Coles Barton LLP
150 South Perry Street
Suite 100
Lawrenceville, GA 30046

Jeffrey R. Harris, Esq.
Darren W. Penn, Esq.
Harris Penn Lowry DelCampo, LLP
400 Colony Square
1201 Peachtree St., N.E.
Suite 900
Atlanta, Georgia 30361

David S. Bills, Esq.
David S. Bills, P.C.
1932 North Druid Hills Road, N.E.
Suite 200
Atlanta, GA 30319

s/STEPHEN G. SMITH, JR.
Georgia Bar No. 795287
For the Firm
Attorney for Plaintiff

DENNIS, CORRY, PORTER & SMITH, L.L.P.
3535 Piedmont Road, NE
14 Piedmont Center, Suite 900
Atlanta, Georgia 30305-4611
Telephone:   (404) 365-0102
Facsimile:   (404) 365-0134
Email:          ssmith@dcplaw.com

THIS IS TO CERTIFY that, pursuant to LR 5.1 B, NDGa., the above document was prepared in Times New Roman, 14 pt.

s/STEPHEN G. SMITH, JR.
Georgia Bar No. 795287
For the Firm
Attorneys for Plaintiff

DENNIS, CORRY, PORTER & SMITH, L.L.P.
3535 Piedmont Road, NE
14 Piedmont Center, Suite 900
Atlanta, Georgia 30305-4611
Telephone:   (404) 365-0102
Facsimile:   (404) 365-0134
Email:          ssmith@dcplaw.com

2362-11141.1(RCP)