UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WESTERN WORLD INSURANCE COMPANY, :<br>:<br>Plaintiff, :<br>:<br>v. :<br>:<br>NARCONON OF GEORGIA, INC., :<br>NARCONON INTERNATIONAL, :<br>PATRICK C. DESMOND AND MARY :<br>C. DESMOND, INDIVIDUALLY, :<br>AND MARY C. DESMOND, AS :<br>ADMINISTRATRIX OF THE ESTATE :<br>OF PATRICK W. DESMOND, AND :<br>NON-PROFITS' INSURANCE :<br>ALLIANCE OF CALIFORNIA, :<br>:<br>Defendants. : | CIVIL ACTION FILE<br>NO. 1:12-cv-02117 |

**RESPONSE OF PATRICK C. DESMOND AND MARY C. DESMOND,
INDIVIDUALLY, AND MARY C. DESMOND, AS ADMINISTRATRIX
OF THE ESTATE OF PATRICK W. DESMOND
TO NONPROFITS' INSURANCE ALLIANCE OF CALIFORNIA'S
MOTION TO DISMISS**

COMES NOW Patrick C. Desmond and Mary C. Desmond, individually, and Mary C. Desmond, as Administratrix of the Estate of Patrick W. Desmond ("the Desmonds"), named as Defendants in this action, and submit this Response to the Motion to Dismiss filed by Nonprofits' Insurance Alliance of California ("NIAC"), as follows:

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

The Desmonds hereby respectfully adopt verbatim and incorporate herein by express reference each and every section of the Response of Western World Insurance Company to Nonprofits' Insurance Alliance of California's Motion to Dismiss, filed December 12, 2012, subject only to the following limited exceptions and supplementations:

## PROCEDURAL BACKGROUND

With respect to the procedural history by which NIAC was added as a party Defendant to this action, the Desmonds consented to and in effect joined in the filing of Western World's Consent Motion and Joint Brief in Support. (See Docket, Document 28 and Attachment 2.)

This is significant insofar as the Desmonds are the Plaintiffs in the Underlying Action[1] and are therein seeking to establish liability against NIAC's insured, Narconon International ("NN INT"), for its negligent and other improper activities in managing and operating the licensed drug and alcohol rehabilitation facility of its subsidiary, Narconon of Georgia, Inc. ("NN GA"), and to ultimately recover damages, to include all available liability insurance proceeds.

---

[1] Patrick C. Desmond and Mary C. Desmond, individually, and Mary C. Desmond, as Administratrix of the Estate of Patrick W. Desmond v. Narconon of Georgia, Inc., and Narconon International; State Court of DeKalb County, Georgia; Civil Action File No. 10A28641.

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

As such, the Desmonds clearly have standing to directly assert their own legal rights and interests against NIAC and wish to advise the Court that, if necessary, they are prepared to and would request leave to file an additional Motion to Add NIAC as a party to this action.

## ARGUMENT AND CITATION OF AUTHORITIES

With respect to the issue of this Court having personal jurisdiction over NIAC, the Desmonds dispute the factual assertions contained in the Declaration of Pamela E. Davis, filed by NIAC, which purports to establish that its insured, NN INT, has never maintained operations in the State of Georgia[2]; and that, therefore, its coverage does not extend to the claims asserted in the underlying action.

These contentions are incorrect under the clear and unambiguous terms of the NIAC policy which covers both "Bodily Injury" including death, related to "Work or operations performed by you [the insured] or on your behalf' including "The providing of or failure to provide warnings or instructions" within the "Coverage Territory" which includes the entire United States of America.

Likewise, NIAC's contentions are flatly contradicted by the evidence in the underlying action. As such, and insofar as the parties have previously stipulated to

---

[2] See Declaration of Pamela E. Davis ¶¶ 5 and 11.

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

the use of discovery from the Underlying Action[3], the Desmonds wish to advise the Court of certain relevant portions of the evidence in the underlying action.

Specifically, and as was alleged in their Complaint and Amended Complaint, and as is reflected by the excerpted materials attached hereto as Exhibits, NN INT was at all relevant times pro-actively engaged in the on-going operations of the drug and alcohol rehabilitation facility of its subsidiary / alter ego, NN GA.

For example, NN INT and NN GA entered into a "Business Associate Agreement" on June 21, 2006 wherein NNI undertook the conduct "periodic on-site reviews of [NN GA's] drug rehabilitation services to assess and improve the quality of care provided to its clients." (See Exhibit A at page 6)

Clark Carr, NN INT's President and corporate representative, admitted in his testimony that in this contractual document, NN INT specifically agreed to do the following:

(1) Conduct health and safety Inspections of NN GA;

(2) Review NN GA's case folders of its clients to verify standards of technology and application thereof;

(3) Review files of NN GA's personnel and trainees to verify that all of the required training has been completed and other legal requirements;

---

[3] See Docket, Document 26, ¶10

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

(4) Correct facility personnel regarding non-optimum situations; and

(5) Implement programs to increase program delivery and quality of care. (See Exhibit B, page 50, line 8 - page 51, line 3).

Additionally, the evidence is that representatives of NN INT conducted multiple on-site inspections of NN GA. (Exhibit B, page 118, line 19 - page 119, line 9). Claudia Arcabascio, the Director of Legal Affairs for NN INT, testified that she had personally performed an on-site inspection, called a "Legal Rudiments Inspection" in 2007 for the purpose of "ensuring that NN GA was "operating right under the [sic] following the law." (See Exhibit C, page 19, lines 15-22; and Exhibit D, document labeled "Exhibit 15 to Arcabascio Deposition").

NN INT also conducts so called "tech inspections" of its facilities, such as NN GA. According to Jett McGregor, one of its loyalists who is based out of the "flagship" facility in Oklahoma and conducts this type of inspection, NN INT's representatives will both inspect the facilities as to administrative issues and evaluate the "technology" materials being used and the manner in which the Narconon program is being delivered. (See Exhibit D, page 57, lines 9-16).

Moreover, the fact that "NNI has authority which was over the actual delivery program which are the offices of NN GA itself" was specifically acknowledged by its President and corporate representative, Mr. Carr. (Exhibit B, page 123, lines 21-25).

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

Pursuant to such authority, in March 2008, less than three months prior to the death of the Desmonds' son, Ms. Arcabascio personally took control over issues relating to the unlicensed, illegal and out-of-control housing operations of NN GA. In an email to the Executive Director of NN GA and others, Ms. Arcabascio asserted "We will handle the situation" and "I will run the program from my post here" and directed that NNGA, among other things, "(1) Find [new] housing… and (3) Get rid of the Delgados" - who were at that time charged with running the housing program. (See Exhibit C, document labeled "Exhibit 17 to Arcabascio Deposition").

Mr. Carr also confirmed that the Narconon Eastern United States, which is based out of Clearwater, Florida, the so called spiritual Mecca of the International Church of Scientology, "performs the same and has the same relation to NN GA that [NN INT does]... To monitor the quality and delivery of the Narconon materials." (Exhibit B, page 126, lines 2-13). In this regard, Mr. Carr further testified that there was a "continuous flow of communications and statistics and reports from [the Executive Director of NN GA] via Narconon Eastern United States to Narconon International." (Id., page 119, line 25 - page 120, line 3).

The evidence is that NNGA was indeed required to provide weekly reports to NN INT. (Exhibit C, page 18, lines 6-14). An example of one of the various types of reports is included as Exhibit E.

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

NN INT has a position designated as "Operations Supervisor." The individual in this position is charged with the responsibility of overseeing the individual facilities and "making sure that the Narconon program is properly delivered." (See Exhibit F, page 15, lines 3-9).

In 2007 and 2008, a man named Yarko Manzanaras was NN INT's Operations Supervisor. As part of his job, Mr. Manzanaras was responsible for setting up annual on-site inspections of the individual facilities. (Id., page 52, lines 7- 20). Although NN INT conducts annual inspections of the individual Narconon centers, such as NNGA, Mr. Manzanaras testified that NNI also has the right to and routinely does conduct "random" inspections. (Id., page 55, lines 22-24; page 56, lines 12-17).

In fact, after the death of the Desmonds' son, Mr. Manzanaras instructed a Ms. McGregor, to undertake a "tech" inspection at NNGA in order to "see how the program was being delivered." (Id., page 53, lines 3-17).

During this "tech" inspection, Ms. McGregor traveled to Georgia and reviewed the folders (patient charts) of individual "students" and also observed the delivery of the program in order to "see what, if anything, needed to be improved." (Exhibit D, page 74, line 18- page 75, line 4; page 76, lines 2-3). When asked what authority she had to go "into this [the NN GA] facility and just start looking

7

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

at patient records," Ms. McGregor answered: "I was representing Narconon International…" (Id., page 74, lines 9 - 15).

Immediately after the death of the Desmonds' son, a separate individual named Barbara Dunn was also sent to NN GA to do a "legal rudiments" inspection. (Id., page 82, line 5 - page 85, line 6).

Mr. Manzanaras explained that during a tech inspection, if a representative from NN INT found something wrong, the representative would issue a "correction," or so called "cram." (Exhibit F, page 55, line 9). See also Exhibit D, page 65, lines 19-20).

Unsurprisingly, at the time of the NN INT's agents' inspections of NN GA after the death of the Desmonds' son, a number of "technical deficiencies" were identified and a number of "crams" were issued. (Id., page 68, line 9 - page 71, line 2).

Finally, it should be noted that not only did NN INT advertise and market NN GA on its own websites, it also falsely held out NN GA as a duly licensed residential facility. (See Exhibit G, "Responses to Requests for Admissions" and exhibits thereto).

Therefore, in light of the actual factual record concerning NN INT's extensive operations and presence in the State of Georgia, it is submitted that the

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

Motion to Dismiss may not properly be granted on the issue of personal jurisdiction.

This 11th day of December, 2012.

                                      DAVID S. BILLS, P.C.

                                      s/ David S. Bills
                                      DAVID S. BILLS
                                        Georgia Bar No. 057132

1932 North Druid Hills Road, N.E.
Suite 200
Atlanta, GA 30319
(404) 633-6000 telephone
(404) 633-6400 facsimile

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

## CERTIFICATE OF SERVICE

This is to certify that I have electronically filed the foregoing RESPONSE OF PATRICK C. DESMOND AND MARY C. DESMOND, INDIVIDUALLY, AND MARY C. DESMOND, AS ADMINISTRATRIX OF THE ESTATE OF PATRICK W. DESMOND TO NONPROFITS' INSURANCE ALLIANCE OF CALIFORNIA'S MOTION TO DISMISS, together with Exhibits "A" - "G" thereto, with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

> Jeffrey R. Harris, Esq.
> Darren W. Penn, Esq.
> Harris Penn Lowry DelCampo, LLP
> 400 Colony Square
> 1201 Peachtree St., N.E.
> Suite 900
> Atlanta, Georgia 30361
>
> R. Clay Porter, Esq.
> Stephen G. Smith, Esq.
> Dennis, Corry, Porter & Smith, LLP
> 3535 Piedmont Road, NE
> 14 Piedmont Center, Suite 900
> Atlanta, GA 30305
>
> Halsey G. Knapp, Jr., Esq.
> Herman L. Fussell, Esq.
> Foltz Martin, LLC
> 3525 Piedmont Road, N.E.
> 5 Piedmont Center, Suite 750
> Atlanta, GA 30305

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

Thomas M. Barton, Esq.
Coles Barton, LLP
150 South Perry Street
Lawrenceville, GA 33046

This 11th day of December, 2012.

DAVID S. BILLS, P.C.

/s/ David S. Bills
DAVID S. BILLS
Georgia Bar No. 057132

1932 North Druid Hills Road, N.E.
Suite 200
Atlanta, GA 30319
(404) 633-6000 telephone
(404)633-6400 facsimile

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)