UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WESTERN WORLD INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | ) Civil Action File |
| v. | ) No. 1:12-cv-2117-AT |
| NARCONON OF GEORGIA, INC., NARCONON INTERNATIONAL, PATRICK C. DESMOND AND MARY C. DESMOND, INDIVIDUALLY, AND MARY C. DESMOND AS ADMINISTRATRIX OF THE ESTATE OF PATRICK W. DESMOND, AND NONPROFITS' INSURANCE ALLIANCE OF CALIFORNIA, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**DEFENDANT NONPROFITS' INSURANCE ALLIANCE OF CALIFORNIA'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

COMES NOW Defendant Nonprofits' Insurance Alliance of California ("NIAC") and submits this Reply Brief in Support of its Motion to Dismiss.

## INTRODUCTION

Plaintiff Western World Insurance Company ("Western World") insists that it has standing to sue NIAC because it has suffered an injury caused by NIAC. But

Western World's own description of that alleged injury reveals its flaws. Western World and NIAC independently issued the two general commercial liability policies at issue here. Western World's policy was issued to Narconon of Georgia and named Narconon International as an additional insured. NIAC's policy was issued solely to Narconon International. When claims were made on those policies based upon the allegations in the Underlying Action, Western World and NIAC reacted, independently, with different decisions. NIAC denied coverage to Narconon International. Western World, on the other hand, reserved its right to deny coverage and elected to provide a defense to both Narconon entities.

Two years later, Western World has reconsidered its decision. It now seeks to avoid further defense costs, contending that the claims were not covered all along. Remarkably, it also seeks to impose upon NIAC some or all of the costs of the defense it voluntarily provided. NIAC, of course, had nothing to do with Western World's initial decision to provide a defense or with Western World's reversal of its position two years later. Having voluntarily elected for its own business reasons to defend its insureds, Western World cannot now suddenly claim that NIAC should reimburse Western World for those costs, especially when Western World now seeks to deny coverage under the same policy upon which it initially provided a defense. There is no contract between Western World and

NIAC, and Western World concedes that it is not a beneficiary of the NIAC policy. Thus, Western World lacks standing to sue NIAC for an alleged breach of, or a declaration regarding, the NIAC policy.

As to personal jurisdiction, both Western World and the Desmonds argue, without the benefit of supporting authority, that merely because Narconon International is subject to jurisdiction in Georgia that NIAC must also be subject to jurisdiction here.[1] This argument is contrary to Georgia's long-arm statute. That statute plainly requires that the defendant whose amenability to jurisdiction is going examined engage in some intentional act or transaction in Georgia. Western World's approach also fails to satisfy the requisites of due process.

For all of these reasons, NIAC's motion must be granted both because Western World has no standing to sue NIAC, and because NIAC is not subject to personal jurisdiction here.

---

[1] Curiously, the Desmonds filed a "response" to NIAC's motion even though they have no claim against NIAC. The apparent purpose of their brief is to attempt to insert facts into the record regarding Narconon International's contacts with Georgia. But Narconon International's Georgia contacts are irrelevant to an examination of NIAC's amenability to personal jurisdiction for the reasons described below. And to the extent the Desmonds refer to "possible" claims against NIAC, those claims are not before the Court and would not confer standing upon Western World in any event.

## **ARGUMENT AND CITATION OF AUTHORITIES**

### A.     **Western World Lacks Standing to Sue NIAC.**

Western World concedes in its Response Brief that the issue of standing is a threshold question that must be addressed before the Court reaches the merits of Western World's claims. (Response at p. 4). Despite that concession, Western World argues that it has standing to seek to enforce the terms of the NIAC policy because that policy allegedly obligates NIAC to provide a defense to Narconon International in the underlying litigation.[2] This argument simply misses the point of the standing requirement.

To establish standing, Western World must demonstrate "constitutional standing," which requires a showing that it has suffered "an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," that that the injury "is fairly traceable to conduct of the defendant," and that "it is likely, not merely speculative, that the injury will be redressed by a

---

[2] For example, putting the cart squarely before the horse, Western World asserts that, because the Desmonds allege in the underlying litigation that the consumption of alcohol contributed to the death of their son, NIAC has a duty to defend Narconon International under the "Liquor Liability Form" attached to the NIAC policy. But the policy only covers injuries caused by the "selling, serving or furnishing of any alcoholic beverage." (Davis Dec., Ex. A at p. 49). There is no allegation in the underlying litigation that Narconon International sold, served or furnished alcohol to Mr. Desmond. Therefore, even if the Court were to consider the merits of Western World's assertions, Western World's contention facially fails.

favorable decision." Kelly v. Harris, 331 F.3d 817, 819-20 (11th Cir. 2003). Western World must also establish prudential standing, which requires, among other things, an examination of "whether the plaintiff is asserting [its] own legal rights and interests rather than the legal rights and interests of third parties." Young Apartments, Inc. v. Town of Jupiter, 529 F.3d 1027, 1039 (11th Cir. 2008).

It should be noted at the outset that Western World's argument simply ignores the bedrock principles of Georgia and California law cited in NIAC's initial Brief that prohibit someone who is neither a party to, nor third-party beneficiary of, a contract from seeking to enforce the provisions of that contract. See Republic Indem. Co. v. Schofield, 54 Cal. Rptr. 2d 637, 47 Cal. App. 4th 220 (1996); American S. Ins. Co. v. Abbensett, 232 Ga. App. 16, 21, 501 S.E.2d 53, 56 (1998). Western World cannot simply wish those concepts away. Indeed, "the general rule [is] that liability claimants are not regarded as third-party beneficiaries of liability policies." Crisp Regional Hosp., Inc. v. Oliver, 275 Ga. App. 578, 583, 621 S.E.2d 554, 559 (2005).[3]

Relying heavily upon Provident Life & Accident Insurance Co. v. Transamerica-Occidental Life Insurance Co., 850 F.2d 1489 (11th Cir. 1988),

---

[3] The only exception to this rule, allowing liability claimants to sue directly to enforce a liability policy when liability insurance coverage is legislatively mandated (*e.g.,* automobile liability insurance), is not applicable here. See Crisp Regional, 275 Ga. App. at 583, 621 S.E.2d at 559.

Western World insists it has standing despite the absence of a contractual or third-party contractual relationship. Western World's reliance on Provident Life is misplaced for several reasons. First, the Provident Life Court applied federal law to decide the standing issue. The Eleventh Circuit has subsequently held, however, that in diversity actions like this one, "[t]he question of whether, for standing purposes, a non-party to a contract has a legally enforceable right therein is a matter of state law." Bochese v. Town of Ponce Inlet, 405 F.3d 964, 981 (11th Cir. 2005). Thus, Western World's claims are governed by the Georgia and California authorities cited in NIAC's brief.

Additionally, the statements in Provident Life on which Western World relies to argue that it has standing to sue simply because it has named the insured in this action are inapposite dicta. Indeed, the Provident Life Court expressly held that one insurer could not sue to obtain a declaration of coverage by another insurer. Id. at 1491 ("[T]he court lacks jurisdiction in this action because there is no legal relationship between the parties on which to base liability."). The Eleventh Circuit's comments about naming the insured to create standing were merely included to distinguish a case from another circuit that the plaintiff insurance company had cited. In other words, those comments were dicta. In any event, the facts in Provident Life are not analogous to the present case because

both Western World and NIAC have now denied coverage. In Provident Life, there was no question that *one of the two* insurers owed a coverage duty to their common insured; the only question was which of the two owed that duty depending upon the timing of the claim. Id. at 1490.

Notably, Western World has not cited a single case in support of its assertion that Western World has suffered an injury as a result of NIAC's decision to deny coverage. Western World made its own independent decision to provide a defense to its insureds. That decision was made voluntarily and without regard to NIAC's coverage position. Although it has now seeks to withdraw the defense and to deny coverage, Western World initially provided a defense to its insureds based upon its own analysis of the claims. Western World has not alleged, and cannot demonstrate, that its alleged injury (defense costs to date) was caused by NIAC. Therefore, Western World has neither constitutional nor prudential standing to pursue this action.

### B. This Court Does Not Have Personal Jurisdiction Over NIAC.

As the Eleventh Circuit held in United Technologies Corporation v. Mazer, 556 F.3d 1260 (11th Cir. 2009), a case that Western World cites in its brief, "[w]here, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts . . . to [the]

plaintiff to produce evidence supporting jurisdiction." Id. at 1274. NIAC supported its motion with the declaration of its founder, President, and CEO, Pamela E. Davis. Thus, to establish that this Court has personal jurisdiction over NIAC, Western World must present evidence demonstrating: (1) that NIAC has "transacted business" in Georgia, pursuant to Georgia's long-arm statute, O.C.G.A. § 9-10-91(1), and (2) that subjecting NIAC to the jurisdiction of this Court would not violate due process. See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257-58 (11th Cir. 2010). Despite those burdens, Western World has cited no evidence showing that *NIAC has transacted business* in Georgia for the simple reason that there is no such evidence. Therefore, NIAC's motion to dismiss must be granted.

    **1.**    **The Long-Arm Statute**.

Western World has presented no evidence that NIAC took any steps to transact business in Georgia. Instead, it argues that NIAC is subject to jurisdiction in Georgia simply because Narconon International is subject to jurisdiction here. Recognizing that NIAC's business activities are plainly insufficient to invoke long-arm jurisdiction, Western World attempts to synthesize the activity of NIAC and its insured to establish jurisdiction over NIAC. That extrapolation is contrary to Georgia law. To "transact business" in Georgia under the long-arm statute, "the

non-resident must have purposefully done an act or consummated a transaction *in Georgia*." Gateway Atlanta Apartments v. Harris, 290 Ga. App. 772, 779, 660 S.E.2d 750, 757 (2008) (emphasis added). "[T]he Georgia Long Arm Statute has been interpreted to mean that 'purposeful acts' must have been performed *by the defendant* to tie it to the State." Simplex-Rapid di Boschiero v. Italia Assicurazioni, 209 Ga. App. 121, 122, 433 S.E.2d 309, 310 (1993) (citations omitted and emphasis supplied).

In Gateway, the plaintiff argued that the non-resident defendants were subject to personal jurisdiction in Georgia because of their contractual relationships with an individual defendant over whom there was no question the court could exercise personal jurisdiction. Like NIAC's relationship with Narconon International, the non-resident defendants did not exercise any control over the individual defendant's actions in Georgia and had no knowledge that he intended to come to Georgia. Accordingly, the court refused to find that the non-resident defendants "purposefully acted in Georgia so as to subject themselves to personal jurisdiction here." Id. at 781, 660 S.E.2d at 758. Likewise, Western World cannot rely on NIAC's contractual relationship with Narconon International to show that NIAC "purposefully acted" in Georgia, particularly where NIAC

sought to limit its business activity to California and had no knowledge of Narconon International's alleged activity in Georgia. (See Davis Decl., ¶¶ 3-6).

Similarly, in Simplex-Rapid, an Italian shipping company sued its Italian insurer in Georgia to enforce a policy that insured cargo that was being shipped from Italy to Iowa. During a stop in Atlanta, it was discovered that the cargo had been damaged. The shipping company made a claim on the policy and the insurer denied the claim. 209 Ga. App. at 121, 433 S.E.2d at 310. The trial court found, and the Court of Appeals agreed, that the Italian insurer had not transacted business in Georgia and, as a result, was not subject to jurisdiction under the long-arm statute. The insurer "was not authorized to transact business in this state, and it did not solicit business from the United States. Its place of business actually was in Italy, and the insurance policy in question was issued in Italy to another Italian company. [The plaintiff] is an Italian company with its place of business in Italy." Id. at 121-22, 433 S.E.2d at 310. Likewise, NIAC is a California entity that issued a California policy in California to another California entity. (Davis Dec., ¶¶ 6-10). The fact that *NIAC's insured* may have, unknown to NIAC, later conducted some business activity in Georgia does not mean that *NIAC itself* transacted business here.

-10-

Invoking an analogy to a manufacturer that deposits goods into the stream of commerce, Western World contends that NIAC has transacted business in Georgia merely because the geographic scope of the NIAC policy included the entire United States. To make this argument, Western World relies on Patron Aviation, Inc. v. Teledyne Industries, Inc., 154 Ga. App. 13, 267 S.E.2d 274 (1980). That case is easily distinguished. The non-resident defendant in Patron sent the defective good "***knowing*** it would be placed in the stream of Georgia commerce." Id. at 14, 267 S.E.2d at 277 (emphasis added). There is no evidence that NIAC knew of Narconon International's alleged activities in Georgia. In fact, it is undisputed that NIAC took affirmative steps to avoid business activity ***anywhere*** outside of California, including Georgia. (See Davis Dec., ¶¶ 3-6).

Moreover, the territorial coverage of NIAC's policy is much more akin to the cases that address a "passive" website that can be viewed anywhere in the United States than it is to that cases regarding depositing goods into the "stream of commerce." For example, it is well-settled that a non-resident defendant who has a website that can be viewed in Georgia has not "transacted business" in Georgia unless the defendant connects to Georgia by actually making sales to Georgia residents. See Jordan Outdoor Enterprises, Ltd. v. That 70's Store, LLC, 819 F. Supp. 2d 1338, 1343 (M.D. Ga. 2011). Likewise, there is no evidence that NIAC

ever expected Narconon International to conduct activity in Georgia. Indeed, because NIAC membership is limited to companies that physically operate only in California, the evidence is precisely to the contrary.

Western World relies upon two cases to argue that NIAC it is subject to jurisdiction in Georgia simply because its insured is subject to jurisdiction here. Both of those cases, however, are inapposite and, upon inspection, of questionable legal validity.

First, Western World cites the decision of the Georgia Court of Appeals in Klein v. Allstate Insurance Company, 202 Ga. App. 188, 413 S.E.2d 777 (1991). That decision, however, was subsequently appealed to the Georgia Supreme Court. The Supreme Court held that the Court of Appeals had decided the issue on improper grounds: because Allstate was *registered* to do business in Georgia, it necessarily was subject to the jurisdiction of Georgia courts. Allstate Ins. Co. v. Klein, 262 Ga. 599, 422 S.E.2d 863 (1992). Accordingly, the entire Klein opinion issued by the Court of Appeals was rendered dicta at best. Moreover, the facts of the Klein case are easily distinguished because it involved an *automobile* liability policy. As the Court of Appeals recognized, "[a]utomobile insurance policies are relatively unique, as they do not have a particular place where the object of the contract is to be performed" and "[t]he protection provided by the policy follows

the vehicle." Id. at 190, 413 S.E.2d at 779.  NIAC was not insuring a mobile vehicle.  Rather, it was providing limited coverage to a business entity based out of California, and it had no reason to anticipate that entity would ever operate in Georgia (or anywhere else outside of California). (Davis Dec., ¶¶ 5-6).

The second case on which Western World relies, McGow v. McCurry, 412 F.3d 1207 (11th Cir. 2005), likewise addressed an automobile insurance policy.  Id. at 1210.  Additionally, the decision has been criticized precisely because the McGow court improperly skipped over the necessary first step of analysis under the long-arm statute: whether the non-resident defendant has transacted business in Georgia.  Id. at 1214; see also Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1258-59 & n.7 (11th Cir. 2010) (specifically noting that the court's analysis in McGow was flawed because it was contrary to Georgia law).

Finally, Western World raises arguments regarding the merits of this coverage dispute (and even the underlying action).  But it is well-settled that "the merit or lack of merit of [the plaintiff's claims] does not establish or defeat personal jurisdiction."  Patron, 154 Ga. App. at 14, 267 S.E.2d at 277.  Even though the merits of the underlying claims are irrelevant to the issues presented by NIAC's motion, one inaccuracy should be corrected:   Western World asserts that NIAC has not disputed coverage in its motion and supporting declaration.  That

assertion is both wrong and irrelevant.  Western World itself alleged (correctly) in its Amended Complaint that NIAC denied coverage to Narconon International. (Am. Compl., ¶ 160).  Therefore, that allegation is taken as true for purposes of this motion, and there was no reason for NIAC to address it further, particularly since the validity of NIAC's denial of coverage is not relevant to the issues presented here.  In short, Western World has not demonstrated -- and cannot demonstrate -- that NIAC transacted business in Georgia.  Therefore, this Court does not have long-arm jurisdiction over NIAC.

### 2.     The Due Process Clause

Western World also contends that exercising jurisdiction over NIAC would not run afoul of the due process clause merely because NIAC's policy with Narconon International included Georgia within its geographic scope. This contention ignores the undisputed facts that the NIAC policy was issued in California by a California entity to a California entity, that the policy is governed by California law, and that NIAC took intentional steps to avoid business relationships with entities that do not base their operations in California. Moreover, the NIAC policy was a general commercial liability policy.  The NIAC policy did not insure a mobile automobile.  Thus, merely because the geographic scope of the policy incudes the entire United States does not suggest that NIAC

could reasonably expect to be haled into court in Georgia given the undisputed California limitations on the business activities of NIAC and its members. Nor has Western World explained how a court in Georgia has an interest in deciding a dispute between a California insurer and a California insured that is governed by California law. Thus, the exercise by this Court of jurisdiction over NIAC would offend traditional notions of fair play and substantial justice and would violate the requirements of due process.

## CONCLUSION

For the foregoing independent reasons, Western World's claims against NIAC should be dismissed because Western World lacks standing to assert those claims and because this Court lacks personal jurisdiction over NIAC.

Respectfully submitted this 27th day of December, 2012.

COLES BARTON LLP

*Thomas M. Barton*
Thomas M. Barton
Georgia Bar Number 040821
Aaron P.M. Tady
Georgia Bar Number 696273

150 South Perry Street
Suite 100
Lawrenceville, Georgia  30046
770-995-5552 - Telephone
770-995-5582 – Facsimile
tbarton@colesbarton.com           Attorneys for Defendant Nonprofits'
atady@colesbarton.com             Insurance Alliance of California

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of December, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will transmit Notices of Electronic Filing generated by CM/ECF to counsel and parties who are authorized to receive electronically Notices of Electronic Filing.

*Thomas M. Barton*
Counsel for Nonprofits' Insurance Alliance of California

## LR 5.1 B CERTIFICATION OF COUNSEL

Pursuant to Local Rule 5.1B, the undersigned counsel for Defendant Nonprofits' Insurance Alliance of California hereby certifies that the foregoing "**Defendant Nonprofits' Insurance Alliance of California's Reply Brief in Support of Motion to Dismiss**" was prepared in Times New Roman, 14 point font.

By: *Thomas M. Barton*
Counsel for Defendant Nonprofits'
Insurance Alliance of California